IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 2 9 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| LESTER L. WALKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:08-CV-317-A |
| | § | |
| TIMOTHY GEITHNER, Secretary, | § | |
| United States Department of | § | |
| Treasury, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant, Timothy
Geithner, Secretary, United States Treasury, for summary judgment
as to all claims and causes of action brought by plaintiff,
Lester L. Walker. Having considered the motion, plaintiff's
response, defendant's reply, the summary judgment record, and
applicable legal authorities, the court concludes that the motion
should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this action through the filing of his
original complaint on May 13, 2008. Plaintiff brings claims
pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981, alleging

that defendant discriminated against him on the basis of race and in retaliation for previous Equal Employment Opportunity activity when he was not selected for two police officer positions.

II.

### The Motion for Summary Judgment

Defendant contends that summary judgment is proper because: plaintiff has failed to establish a prima facie case of race discrimination with respect to either of his claims; the record contains no evidence that defendant's legitimate non-discriminatory reasons for plaintiff's non-selection are a pretext for unlawful discrimination; and, plaintiff has failed to offer any evidence in support of his claim of retaliation.

III.

### Undisputed Facts

The following facts are undisputed in the summary judgment record:[1]

Plaintiff, an African-American male, is employed by the Department of Treasury, Bureau of Engraving and Printing ("BEP") in the position of Final Verifier at the Bureau's Western

---

[1]Many of the facts are developed from testimony given under oath in plaintiff's administrative hearings. Sworn testimony taken in an administrative proceeding has been considered to be probative summary judgment evidence.  See United States v. Chevron Oil Co., 583 F.2d 1357, 1360 (5th Cir. 1980), superseded by statute on other grounds, Pub. L. No. 95-576, § 1(b), 92 Stat. 2467; Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 162 (7th Cir. 1963).

Currency Facility in Fort Worth, Texas, a position held by him
since June 1995.  From approximately January 1994 to June 1995
plaintiff's position was that of a police officer at the BEP's
Western Currency Facility.

The Western Currency Facility is normally staffed with sixty
police officers.  Following the September 11, 2001, terrorist
attacks and due to other circumstances, in 2001 the number of
officers fell below the authorized number, so steps were taken to
hire additional officers.  Hiring and replacing police officers
for the BEP is a lengthy process that entails posting the initial
vacancy announcement, administering required tests, selecting,
processing, and notifying qualified applicants, submitting
paperwork for, and conducting, background investigations, and
culminating with selected applicants attending an eleven-week
course at the Federal Law Enforcement Training Center (FLETC).

On or about October 3, 2001, BEP posted vacancy announcement
number DEU-2002-02-SRP for the position of Police Officer, TR-
0083-06/07 ("TR-7 Position"), listing multiple vacancies.  Due to
the lengthy application process for police officers, Ernest
Coleman ("Coleman"), Inspector of Police Service Branch at the
Western Currency Facility, decided to use the non-competitive
referral process to fill the vacancies, whereby an applicant who

previously occupied the same position or same level of position may be considered for a position simply by submitting an application.

Around July of 2002, while in Washington, D.C., Martha Howe ("Howe"), Manager of the Security Division at the Western Currency Facility, learned that applicants selected as police officers who had not worked in the field of law enforcement for a period of five years prior to their selection were required to repeat the FLETC training.  Upon returning from Washington, D.C., Howe implemented the five-year retraining policy.  Individuals selected as police officers prior to implementation of the new policy were not required to repeat the FLETC training because the Western Currency Facility was previously unaware of that requirement.  Thus, some individuals selected for TR-7 Positions prior to the retraining policy were not required to attend the FLETC training.

The BEP often encountered a lengthy wait for slots to become available for FLETC training.  Thus, upon receiving eight such slots for the FLETC training scheduled for November 5, 2002, Coleman began selecting additional non-competitive applicants in order to fill the available training openings.  On August 8, 2002, plaintiff submitted his application to Karen Riley

4

("Riley"), Human Resource Specialist, for consideration for a TR-7 Position.  On August 30, 2002, plaintiff's application was certified to Coleman, and on October 10, 2002, Coleman selected plaintiff and another applicant for TR-7 positions, which were approved by Howe and the Western Currency Facility Plant Manager. During this same period, Coleman also selected other individuals to fill the TR-7 Positions, including Kelvin Samuels ("Samuels"), who is African-American.

On October 17, 2002, Coleman requested that Riley issue a job offer to plaintiff.  Riley attempted on October 18, 2002, to contact plaintiff to offer him the TR-7 Position but was told by his supervisor that he was out of town due to the death of his brother and was expected to return the following Wednesday.  On the following Wednesday, October 23, 2002, Riley again attempted to contact plaintiff to offer him the TR-7 Position and was informed that he was still out of town and his return date was unknown.

On October 23, 2002, when Riley informed Coleman that she had been unable to contact plaintiff, he instructed her not to offer plaintiff the position because all of the upcoming FLETC

training slots were filled.[2]  When plaintiff contacted Riley upon his return on October 24, 2002, she informed him that she had called to offer him a TR-7 Position but was no longer able to do so due to the lack of available FLETC slots.

After the November 2002 FLETC training began, Howe received negative information about plaintiff from Dick Laird ("Laird"), Assistant Chief Financial Officer, who was also plaintiff's second-level supervisor.  Laird informed Howe that plaintiff "does his job well enough, but any time we have issues or problems, it seems like [plaintiff] is a part of those problems." Def.'s App. at 93.  Based on this information, Howe contacted the personnel office and learned that although plaintiff had previously been selected for a TR-7 Position she was not required to extend him an offer.  Howe then directed Coleman not to offer plaintiff a TR-7 Position based on the information she received from Laird.  On December 18, 2002, Coleman advised Riley via e-mail not to offer plaintiff a TR-7 Position.

On August 14, 2003, the BEP posted vacancy announcement number 2003-18-KDR, Supervisory Police Officer, TR-083-09 ("TR-9

---

[2]No offers for police officer positions may be made unless FLETC slots are available.

Position"), advertising two vacancies, with a third added later.[3]
An interview panel consisting of Coleman, Captain Bradford, and
Lieutenant Tijerina convened at the Western Currency Facility to
interview and rate the applicants for the TR-9 Positions.

At the time plaintiff applied and was interviewed for the
TR-9 Position, he had one and one-half years' experience as a BEP
police officer, with no BEP supervisory police officer
experience, and had been away from law enforcement for over eight
years. One applicant, Lurdell Thomas ("Thomas"), was a BEP
police officer at the time he applied, with over eleven years'
experience in that position and nine years' supervisory
experience in the United States Air Force. Another applicant,
Mr. Cartagena ("Cartagena"), also a current BEP police officer,
had over six years' experience in that position, plus experience
as a temporary supervisory police officer, as well as two years'
experience as a police officer with the Veterans Administration
and eighteen years of supervisory police experience with the
United States Air Force. Applicant Ed Barnes ("Barnes")

---

[3]Riley initially believed that plaintiff did not qualify for the TR-9 Position because he did not meet the
time-in-grade requirements, and she so informed him by letter on September 5, 2003. Upon learning that
plaintiff was not required to comply with the time-in-grade requirement, Riley on October 23, 2003,
issued a new list of qualified applicants that included plaintiff, and she informed him of the mistake that
same day.

possessed over ten years of BEP police officer experience at the time he applied, including more than seven years' experience as a TR-9 supervisory officer.

Upon conclusion of the interviews, Coleman and Bradford ranked Cartegena number one, Thomas number two, Barnes number three, and plaintiff number four. Tijerina rated Thomas number one, plaintiff number two, Cartegena number three, and Barnes number four.  Coleman, the selecting official, selected Barnes (Caucasian), Cartegena (Hispanic), and Thomas (African-American) for the available TR-9 Positions.  On the Certificate of Eligibles form documenting his selections, Coleman indicated that his selections were

> based on the candidate's unremitting dedication to law enforcement; their supervisors [sic] recommendation; their previous supervisory experience; their demonstrated knowledge of leadership principles as articulated during the interview process, with mature, intelligent and procedurally correct answers; and the favorable recommendation received from the interview panel members.

Def.'s App. at 148.

Following his non-selection for the TR-9 Position, plaintiff filed a charge of discrimination with his Equal Employment Opportunity representative, and hearings were held on December 15, 2004, and March 4, 2005.  On May 3, 2005, the Administrative

Law Judge overseeing the hearing issued a finding of no
discrimination.   The EEOC denied plaintiff's appeal and request
for reconsideration.

### IV.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part
of a claim as to which there is no genuine issue of material fact
and as to which the moving party is entitled to judgment as a
matter of law.   Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247 (1986).   The moving party has the initial
burden of showing that there is no genuine issue of material
fact.   Anderson, 477 U.S. at 256.   The movant may discharge this
burden by pointing out the absence of evidence to support one or
more essential elements of the non-moving party's claim "since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."   Celotex Corp. v. Catrett, 477 U.S. 317, 323-25
(1986).   Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that
there is some metaphysical doubt as to the material facts.
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986).   The party opposing the motion may not rest on

mere allegations or denials of pleading, but must set forth

specific facts showing a genuine issue for trial. <u>Anderson</u>, 477

U.S. at 248, 256. To meet this burden, the nonmovant must

"identify specific evidence in the record, and [] articulate the

'precise manner' in which that evidence support[s] [its]

claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994).

An issue is material only if its resolution could affect the

outcome of the action. <u>Anderson</u>, 477 U.S. at 248. Unsupported

allegations, conclusory in nature, are insufficient to defeat a

proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d

265, 269 (5th Cir. 1984).

V.

<u>Analysis</u>

A.   <u>Plaintiff's Response and Summary Judgment Evidence</u>

Plaintiff filed a response to defendant's motion for summary

judgment accompanied by six spiral-bound volumes of documentary

evidence totaling 1,723 pages. After attempting to review the

response the court is unable to discern with any clarity the

exact nature of plaintiff's arguments in response to defendant's

motion. Defendant's reply maintains that pages nine through

thirty-six of plaintiff's response are virtually identical to the

closing brief submitted by plaintiff's counsel at the close of

the administrative law hearing, a copy of which is attached to the reply. After review of both plaintiff's response and the attachment to defendant's reply, the court agrees, finding this contributes to the confusion in plaintiff's response. Many citations in plaintiff's response are to documents abbreviated as "ROI" or "HT," designations which, as best the court can determine, do not refer to documents in plaintiff's appendices. Plaintiff's obligation is to "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [his] claim[s]." Forsyth, 19 F.3d at 1537. Most of plaintiff's citations are to numerous, sometimes dozens, of pages and fail to meet his evidentiary burden.[4] Although plaintiff appears pro se in this action, he must still abide by the Federal Rules of Civil Procedure. See United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). It is not incumbent on the court to pour through plaintiff's voluminous evidentiary submissions in the hopes of discovering support for his claims. See Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992) (district court not required to "sift through the

---

[4] As just one example, one citation on page 7 of the response directs the court to the following pages of plaintiff's appendices: App. 380-448, App. 635-661, App. 1057-1128, App. 1203-1254.

11

record in search of evidence to support a party's opposition to summary judgment").

B.  Evidentiary Framework

To evaluate claims of race discrimination or retaliation absent direct evidence, the court looks to the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).[5] This framework, in turn, requires plaintiff first to make out a prima facie case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff makes out a prima facie case, a presumption of discrimination or retaliation arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for its actions. See McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). If defendant meets this burden of production, the plaintiff "bears the ultimate burden of proving that the employer's proffered

---

[5]The elements of an employment discrimination claim pursuant to 42 U.S.C. § 1981 are identical to one asserted under Title VII. Flanagan v. Aaron E. Henry Cmty. Health Sevs. Ctr., 876 F.2d 1231, 1233 (5th Cir. 1989). Thus, the analysis of plaintiff's Title VII claims applies to, and is dispositive of, his claims pursuant to § 1981. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir.2004).

reason is not true but instead is a pretext for the real

discriminatory or retaliatory purpose."[6] McCoy, 492 F.3d at 557.

The plaintiff must rebut each nondiscriminatory or nonretaliatory

reason articulated by the employer. Id.

C.    Plaintiff's Claims of Race Discrimination

As plaintiff has offered no direct evidence of race

discrimination, he must establish a prima facie case on the basis

of race discrimination by showing (1) he belongs to a protected

class; (2) he was qualified for the position sought; (3) he was

not promoted or suffered an adverse employment action; and, (4)

the position was filled by someone not in the protected class, or

that defendant rejected him under circumstances giving rise to an

inference of unlawful discrimination. McDonnell Douglas, 411

U.S. at 802; Oden v. Oktibbeha County, Miss., 246 F.3d 458, 468

(5th Cir. 2001). Defendant argues that plaintiff cannot

establish the fourth element of his prima facie case as to either

the TR-7 Position or the TR-9 Position because in each case an

---

[6]Plaintiff may also rebut defendant's nondiscriminatory reason through evidence that the reason, while true, is only one of the reasons for its conduct, and the plaintiff's protected characteristic is another motivating factor (mixed-motive alternative). See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In analyzing defendant's motion for summary judgment, the court will only address the pretext alternative, as plaintiff did not assert that defendant's decisions were based on "mixed motives," nor has the court found any evidence of such motives in the summary judgment record.

African-American was selected for one of the vacant positions.
The court agrees.

The undisputed summary judgment evidence shows that an
African-American applicant was selected for at least one of the
vacant TR-7 and TR-9 Positions for which plaintiff applied.
Under these circumstances, plaintiff has failed to establish a
prima facie case of race discrimination. See Bright v. GB
Bioscience Inc., 305 F. App'x 197 at *6 (5th Cir. Dec. 15,
2008) (holding African-American plaintiff failed to establish
prima facie case of race discrimination where African-American
applicant was selected for at least one of the available
positions for which plaintiff applied).

Even if the court were to consider that plaintiff
established a prima facie case of race discrimination, the
court finds defendant has articulated legitimate, non-
discriminatory reasons for his non-selection as to both
positions, and plaintiff has adduced no summary judgment
evidence showing that defendant's reasons were pretext for race
discrimination. Although plaintiff makes conclusory assertions
to that effect in his response, he directs the court to no
specific summary judgment evidence in support.   Summary

judgment is warranted as to plaintiff's claims of race
discrimination.

D.   <u>Plaintiff's Retaliation Claim</u>

Defendant argues that plaintiff failed to establish a
<u>prima</u> <u>facie</u> case of retaliation as to the TR-7 position because
he failed to engage in any protected activity prior to his non-
selection for that position.  Even if he did, defendant
contends that plaintiff has failed to establish causation, as
he cannot demonstrate that the individuals responsible for his
non-selection knew about any prior EEO activity.  Whether or
not he established a <u>prima</u> <u>facie</u> case, the court agrees that
plaintiff cannot establish the necessary causation.  "A causal
link is established when the evidence demonstrates that the
employer's decision . . . was based in part on knowledge of the
employee's protected activity."   <u>Medina v. Ramsey Steel Co.,</u>
<u>Inc.</u>, 238 F.3d 674, 684 (5th Cir. 2001) (internal citations and
quotation marks omitted).  Both Howe and Coleman testified that
at the time they decided not to select plaintiff for the TR-7
Position they had no knowledge of any EEO activity on his part.
Coleman, the decisionmaker as to the TR-9 position, testified
that he was unaware of any EEO activity by plaintiff at the

time of plaintiff's non-selection for the TR-9 Position.
Plaintiff has adduced no summary judgment evidence to the
contrary.  Absent knowledge of any protected activity,
plaintiff cannot establish causation.  Watts v. Kroger Co., 170
F.3d 505, 512 (5th Cir. 1999).

Additionally, plaintiff failed to direct the court to
evidence showing that defendant's proffered reasons for his
non-selection for either position were a pretext for
retaliation.  Plaintiff's subjective belief to that effect,
without more, is insufficient to survive summary judgment.
Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th
Cir. 1996).

VI.

Order

Therefore,

For the reasons stated herein,

The court ORDERS that defendant's motion for summary
judgment be, and is hereby, granted, and that all claims and
causes of action asserted by plaintiff, Lester L. Walker,
against defendant, Timothy Geithner, be, and are hereby,

dismissed with prejudice.

     SIGNED December 2-9, 2009.

_____
JOHN McBRYDE
United States District Judge